CLERK'S OFFICE U.S. DIST COURT
AT CHARLOTTESVILLE, VA
FILED

DEC 0 9 2008

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

FABIO COMINELLI,

                *Plaintiff,*

v.

THE RECTOR AND VISITORS OF THE
UNIVERSITY OF VIRGINIA, *and*

ROBERT M. STRIETER
*in his official and individual capacity*,

                *Defendants.*

CIVIL NO. 3:08CV00048

MEMORANDUM OPINION

JUDGE NORMAN K. MOON

This matter is before the Court on Defendants' Motion to Dismiss (docket no. 2) pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiff's subsequent Motion to Amend (docket no. 18). For the reasons that follow, I will DENY Plaintiff's Motion to Amend Counts 1 and 4 of the Complaint and GRANT Defendants' Motion to Dismiss Counts 1, 2, 3, 5, 6, and 7 of the Complaint.

## I. BACKGROUND

Fabio Cominelli ("Plaintiff") first began working at the University of Virginia ("UVA") Hospital in 1995 as the Chief of the Division of Gastroenterology and Hepatology ("Division"). He later founded the Digestive Health Center of Excellence ("Center") and served as its Director while continuing to serve as Chief of the Division. According to Plaintiff, the Division and the Center both achieved immense success under his leadership and guidance. During his tenure as Chief, Plaintiff claims that the Division grew in size, received substantial funding from the National Institutes of Health, and maintained significant profits—amounting to more than $5

million over a twelve-year period, all of which was distributed to other less profitable divisions within the Department of Medicine at UVA. Plaintiff also claims that, under his leadership, the Center reaped over $37 million in profits for the Medical Center over a six-and-a-half year period.

Plaintiff maintains that he had an excellent relationship with his superiors at the Hospital until 2006, when Defendant, Dr. Robert Strieter, became Chairman of the Department of Medicine and thus Plaintiff's superior. In the fall of that year, the School of Medicine and the Audit Department conducted an audit of Plaintiff's Division, which Plaintiff alleges was targeted at him to collect evidence to eventually remove him from his position. In early 2007, Plaintiff alleges that he expressed concerns about the audit to the School of Medicine's Dean and Director of Faculty and Staff Employee Relations, but no action was taken to address his concerns.

As the audit continued, Plaintiff applied for the position of Chair of the Department of Medicine at the University of Maryland ("UMD"). Plaintiff alleges that, after several interviews, he was eventually invited to come to Maryland on June 25-26, 2007 to meet others in the School of Medicine and sign an employment agreement. He also claims that the Dean of the UMD Medical School scheduled a conference call for June 12, 2007 to review an electronic copy of an offer letter that the Dean was supposed to send to Plaintiff later that day.

On June 11, 2007, Plaintiff alleges that he was scheduled to meet with the auditor for the School of Medicine to review and discuss a draft of the audit report but was instead directed to meet with Strieter and the Dean of the UVA Medical School. At the meeting, Plaintiff was given a letter informing him that Strieter was choosing to exercise his discretion as Chair of the Department to remove Plaintiff from his positions in response to significant concerns about Plaintiff's leadership, "including a high rate of faculty departures, repeated reports of unfair allocation of financial resources, failure to make funds available as committed in start up

2

packages, inappropriate restrictions on access to research materials, and numerous instances of poor management practices and violations of University policies as documented in a recent University Internal Audit investigation." Plaintiff claims that he was never given an opportunity to review the draft audit report until well after he was removed from his positions as Director and Chief, and that he was never given an opportunity to discuss the allegations and the reasons for his termination with the Dean and Strieter.

After meeting with Plaintiff on June 11, 2007, Strieter sent an email to the Division announcing that Plaintiff had been removed from his positions as Director and Chief "in response to an ongoing personnel matter." Plaintiff claims that Strieter sent the email with full knowledge that it would be interpreted as a statement that Plaintiff was guilty of some "grievous personal wrongdoing" and that it would be re-published in the broader academic and medical community, likely affecting Plaintiff's pending appointment at UMD. On June 13, 2007, the email was forwarded to eighty-one other people within the Department of Medicine. Plaintiff further alleges that Strieter removed him on June 11, 2007 because he was under the impression that Plaintiff was going to announce his departure to UMD on June 12, 2007 and was "anxious to engineer his termination from his positions" as Chief and Director. According to Plaintiff, Strieter's scheme worked, because the Dean of UMD called to express his concern about the situation the day after Strieter's email was sent and withdrew UMD's offer a few days later.

After being removed from his positions as Director and Chief, Plaintiff maintained his position as a faculty member at UVA. He eventually received a copy of the draft audit report, which he claims focused on the expenses related to several of the 130 trips he took in his capacities as Director and Chief. He claims that the majority of mistakes and irregularities uncovered by the audit were related to the fact that the trips he took were financed by other entities in addition to UVA. He alleges that he provided a detailed response for every item

3

questioned and reimbursed UVA for any expenses the auditor believed were incorrectly accounted for. He also complains that he never received evaluations as a faculty member during Strieter's tenure as Chair, with the sole exception of an evaluation of his position as Chief in 2006. He claims that the University's failure to provide these evaluations violated several Department policies and procedures.

In light of these facts, Plaintiff alleges seven different counts in his Complaint: (i) tortious interference with business expectancy (against all Defendants); (ii) tortious interference with business expectancy (against the individual Defendant Strieter); (iii) defamation (against the individual Defendant Strieter); (iv) denial of due process under 42 U.S.C. § 1983 (against UVA and against Defendant Strieter in his representative capacity); (v) denial of due process under the Virginia Constitution (same); (vi) wrongful termination—breach of contract (against UVA); and (vii) and punitive and exemplary damages (against all Defendants). Defendants filed a Motion to Dismiss on September 30, 2008.

In response to several pleading deficiencies identified by Defendants in the Motion to Dismiss, Plaintiff filed a Motion to Amend on October 30, 2008, alleging six separate counts. In an Order (docket no. 20) dated November 5, 2008, this Court granted Defendants' Motion to Dismiss Plaintiff's § 1983 due process claim against the University and Strieter in his representative capacity (Count 4) while reserving judgment on the Motion to Amend and the Motion to Dismiss the remaining counts of the Complaint.

## II. STANDARD OF REVIEW

### A. MOTION TO DISMISS

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."

4

*Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (internal citations omitted). Instead, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.* at 1965, with all allegations in the complaint taken as true and all reasonable inferences drawn in the plaintiff's favor. *Chao v. Rivendell Woods, Inc.*, 415 F.3d 342, 346 (4th Cir. 2005); *Warner v. Buck Creek Nursery, Inc.*, 149 F. Supp. 2d 246, 254-55 (W.D. Va. 2001). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974. A plaintiff's complaint must therefore be plausible, not merely conceivable, in order to avoid dismissal. *Id.*

### B. Motion to Amend

Under Federal Rule of Civil Procedure 15(a), a party may amend its complaint after a responsive pleading has been served with the court's leave, which "shall be freely given when justice so requires." A court should deny leave to amend "only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962). "[D]elay alone is not sufficient reason to deny leave to amend" and "must be accompanied by prejudice, bad faith, or futility. *Id.* (citations omitted). An amendment may properly be found futile where, as a matter of law, it fails to state a claim. *See, e.g., Donaldson v. U.S. Dep't of Labor*, 930 F.2d 339, 349 (4th Cir. 1991); *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986) ("[l]eave to amend…should only be denied on the ground of futility when the proposed amendment is clearly insufficient or frivolous

5

on its face.") (citations omitted).

### III. DISCUSSION

#### A. § 1983 DENIAL OF DUE PROCESS

In an Order dated November 5, 2008, this Court dismissed Count 4 of Plaintiff's Complaint for denial of due process against the University and Strieter in his representative capacity (docket no. 20). Plaintiff seeks leave to amend his § 1983 due process claim to name Strieter as a Defendant in his individual capacity.[1] A court may deny leave to amend where amendment would be futile, and an amendment may properly be found futile where, as a matter of law, it fails to state a claim. *Donaldson*, 930 F.2d at 349; *Johnson*, 785 F.2d at 510. Accordingly, to determine whether Plaintiff's Motion to Amend Count 4 should be granted, it is necessary to inquire whether Plaintiff would be able to state a § 1983 due process claim if permitted to name Strieter as a Defendant in his individual capacity.

*1. Deprivation of Property Interest*

The Due Process Clause of the Fourteenth Amendment "protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Therefore, in order to state a claim for denial of due process under § 1983, facts alleged in a complaint must support the deprivation of a liberty or property interest. Plaintiff claims that he had a property interest in his position as Director of the Center because the position was a five-year commitment with non-discretionary tenure. Defendants argue that Plaintiff may have had a property interest in his position as a member of the School of Medicine's general faculty

---

[1] 42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

6

but did not have a property interest in his position as Director, which was a form of discretionary, at-will employment.

In Virginia, an at-will government employee "has no legitimate expectancy of continued employment and thus has no protectible property interest." *Jenkins v. Weatherholtz*, 909 F.2d 105, 107 (4th Cir. 1990). By contrast, a public employee who can only be discharged for cause has a protectible property interest in his tenure and cannot be fired without the protections of the Due Process Clause. *Gilbert v. Homar*, 520 U.S. 924, 928-929 (1997). Virginia applies a presumption that an employment relationship is at-will, but the presumption can be rebutted "if sufficient evidence is produced to show that the employment is for a definite, rather than an indefinite, term." *County of Giles v. Wines*, 262 Va. 68, 72 (Va. 2001).

Plaintiff's key allegation in support of the existence of a property interest is that his position as Director of the Center was a five year appointment with non-discretionary tenure. This bare allegation, alone, however, is insufficient to rebut the presumption that the position was a form of at-will employment. Plaintiff fails to allege, for example, when the alleged term of appointment commenced, or if it was over when he was removed. Moreover, Strieter's June 11, 2007 letter to Plaintiff (Pl. Compl., Exh. 5), which informed him that his appointment as Director "was subject to review at the end of five years," is insufficient evidence that Plaintiff's position as Director was for a definite term at the time he was removed. For example, the fact that the appointment *was* subject to review at the end of five years could be read to infer that the five years had passed and the appointment continued for an indefinite term. Plaintiff's bare allegation is insufficient to overcome the presumption of at-will employment under these circumstances, even at the motion to dismiss stage.

Furthermore, other circuits have held that intra-departmental demotions similar to Plaintiff's do not implicate property interests subject to the protection of the Due Process Clause.

7

See, e.g., *Garvie v. Jackson*, 845 F.2d 647, 651 (6th Cir. 1988) (demotion from department chairman to professor not a denial of a protected property interest); *Kelleher v. Flawn*, 761 F.2d 1079, 1087 (5th Cir. 1985) (reduction of graduate student's teaching duties not denial of a protected property interest). The Fourth Circuit cited this very proposition in dicta to hold that the transfer of a tenured professor from one department to another "does not implicate any property interest protected by the Due Process Clause." *Huang v. Board of Governors*, 902 F.2d 1134, 1142 (4th Cir. 1990). Plaintiff was essentially demoted to a general faculty position after he was removed from his positions as Chief and Director. Because this Court takes the view that an intra-departmental demotion cannot implicate a protectible property interest, Plaintiff fails to allege facts sufficient to show the deprivation of property interest that would trigger the protections of the Due Process Clause.

2. *Deprivation of Liberty Interest*

Because Plaintiff fails to plead facts sufficient to show the deprivation a protectible property interest, the viability of his due process claim depends on whether he can properly allege the deprivation of a protectible liberty interest. Plaintiff claims that he was deprived of a liberty interest in his good reputation as Director and Chief by virtue of the defamatory statement in Strieter's June 11, 2007 email, which occurred in the course of termination of his employment. Defendants contend that Plaintiff was not deprived of a protectible liberty interest because the statement in the email was true and because Plaintiff was not terminated, as he kept his position as a general faculty member.

While reputation alone is neither a liberty nor property interest "by itself sufficient to invoke the procedural protection of the Due Process Clause," defamation occurring in the course of the termination of employment may constitute a deprivation of a protected liberty interest. *Paul v. Davis*, 424 U.S. 693, 706, 710 (1976). To be actionable, an allegedly defamatory

8

statement must "tend[] so to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." *Id.* (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)). Because truth is an absolute defense to an action for defamation, a defamatory statement must also be false. *McBride v. City of Roanoke Redevelopment & Hous. Auth.*, 871 F. Supp. 885, 892 (W.D. Va. 1994) (citations omitted).

Strieter's June 11, 2007 email stated, in pertinent part, that he was exercising his discretion to remove Plaintiff "from his administrative appointments" as Chief and Director "in response to an ongoing personnel matter." While Plaintiff alleges that this statement was "false and defamatory," the facts set forth in the Complaint do not support such a conclusion. As explained above, "more than labels and conclusions" are required to state a claim because "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1964-65. Regardless of the alleged motives behind Strieter's actions and the University audit, the facts set forth in the Complaint support the conclusion that Plaintiff was removed from his positions in response to a personnel matter, exactly as Strieter's email stated. The facts alleged in the Complaint, for example, support a conclusion that Strieter made his decision to remove Plaintiff from his administrative appointments in partial response to the findings of the audit investigation, which related to expenses Plaintiff incurred while on some of the 130 trips he took in his capacity as Chief and/or Director. Furthermore, Strieter's June 11, 2007 letter to Plaintiff clearly states several other reasons for the decision, including numerous instances of poor management practices, unfair allocation of financial resources, and a high rate of faculty departures. In light of all these reasons, it cannot be reasonably disputed that Strieter removed Plaintiff from his positions "in response to an ongoing personnel matter," even if there were other underlying reasons for the removal. Since Plaintiff fails to allege facts sufficient to

9

support a conclusion that Strieter's statement was false, he cannot allege defamation occurring in the course of employment and thus has not properly shown the deprivation of a liberty interest triggering the protections of the Due Process Clause.[2]

Furthermore, to support the deprivation of a property interest protectible under the Due Process Clause, a defamatory statement must occur in the course of the termination of employment. *Paul v. Davis*, 424 U.S. 693, 706, 710 (1976). While Plaintiff was removed from two administrative posts within the Department of Medicine, he was not terminated from his tenured position as a member of the general faculty. Because Plaintiff remained employed with the Department of Medicine, the alleged defamation could not have occurred in the course of the termination of his employment, as is required to state a viable claim for deprivation of a liberty interest under the Due Process Clause.

Plaintiff therefore fails to allege facts sufficient to support the deprivation of a liberty or property interest. Because at least one of these interests must be at stake to trigger the protections of the Due Process Clause, Plaintiff cannot state a claim under § 1983. Because Plaintiff cannot state a § 1983 claim under the facts alleged, amendment would be futile. Accordingly, Plaintiff's Motion to Amend Count 4 is denied.

B. JURISDICTION OVER REMAINING STATE LAW CLAIMS

Since Plaintiff's § 1983 claim has been dismissed and is the only one over which this Court has original jurisdiction, it is within the Court's discretion as to whether to exercise jurisdiction over the remaining state law claims. 28 U.S.C. § 1367(c); *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) ("trial courts enjoy wide latitude in determining whether or not to

---

[2] It should also be noted that a plaintiff may state a claim for deprivation of liberty interest caused by the public announcement of the reasons for his discharge. To state such a claim, however, a plaintiff must properly allege that, among other things, the charges levied against him were false. *Sciolino v. City of Newport News*, 480 F.3d 642, 646 (4th Cir. 2007). As explained above, Plaintiff fails to allege facts sufficient to support a conclusion that Strieter's statement was false. He therefore also fails to state a claim for deprivation of liberty interest under this rubric.

10

retain jurisdiction over state claims when all federal claims have been extinguished."); *Davis v. Pak*, 856 F.2d 648, 651 (4th Cir. 1988) (if a court disposes of a claim over which it has original jurisdiction on the merits, then it retains the power to decide any pendent state law claims). Some of the factors that a district court may take into account in deciding whether to exercise this discretion include "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan*, 58 F.3d at 110.

In the interests of convenience to the parties and judicial economy, this Court chooses to exercise supplemental jurisdiction over the remaining state law claims. Dismissing the remaining state law claims at this point in the proceedings is unnecessary, as Defendants consented to and joined in the Notice of Removal from state court and this Court is already very familiar with the facts and the claims of this case. Both parties have been given ample opportunity to be heard on the merits of the claims, as a hearing on the Motion to Dismiss was held on November 3, 2008. For these reasons, the Court will exercise its discretion to decide the remaining state law claims.

### C. DENIAL OF DUE PROCESS UNDER VIRGINIA CONSTITUTION (AGAINST THE UNIVERSITY AND STRIETER IN HIS REPRESENTATIVE CAPACITY)

Plaintiff makes the same key allegations in support of his denial of due process claim pursuant to the Virginia Constitution as he does in support of his § 1983 claim. Because "federal and Virginia due process protections are coterminous," *Mandel v. Allen*, 81 F.3d 478, 479 (4th Cir. 1996) and Plaintiff fails to allege facts sufficient to support the deprivation of a liberty or property interest for the reasons set forth above, Defendants' Motion to Dismiss Count 5 of the Complaint is granted.

### D. TORTIOUS INTERFERENCE (AGAINST ALL DEFENDANTS)

Plaintiff's tortious interference claim is brought pursuant to the Virginia Tort Claims Act ("the Act"), Va. Code § 9.01-195.1 *et seq.*, which provides for "an express, limited waiver of the Commonwealth's immunity from tort claims." *Patton v. Commonwealth*, 262 Va. 654, 658 (2001). Because the Act provides a "waiver only of the Commonwealth's sovereign immunity but does not disturb the sovereign immunity of the Commonwealth's agencies," *Rector & Visitors of Univ. of Va. v. Carter*, 267 Va. 242, 244 (2004), Count 1 should be dismissed as to the University, which is an agency of the Commonwealth.

Plaintiff argues that although the University may be entitled to immunity, Strieter is not. While the Commonwealth's immunity is absolute unless waived, state employees are not immune for wanton or grossly negligent behavior, intentional torts, or actions taken outside the scope of their employment. *James v. Jane*, 221 Va. 43, 53 (1980); *see also Elder v. Holland*, 208 Va. 15 (1967) (sovereign immunity does not extend to a police officer who was sued for defamatory words spoken in the course of his official duties for the state police). In this case, whether Strieter is immune for actions taken in the course of his employment for the Commonwealth depends on whether Plaintiff can state a claim for tortious interference—an intentional tort.

To state a claim for tortious interference, Plaintiff must show that: (i) he had a contract expectancy with UMD; (ii) Strieter knew of the expectancy; (iii) Strieter intentionally interfered with the expectancy; (iv) Strieter used improper means or methods to interfere with the expectancy; and (v) Plaintiff suffered a loss as a result. *Maximus*, 254 Va. 408, 414 (1997). While Plaintiff properly alleges that he had a contract expectancy with UMD that Strieter was aware of, he does not allege facts sufficient to support a conclusion that Strieter intentionally interfered with the expectancy or used improper means to do so.

12

The mere fact that, according to Plaintiff, Strieter removed Plaintiff from his administrative positions and published the departmental email with awareness of the likely effect on Plaintiff's pending appointment at UMD is not sufficient to establish that Strieter specifically intended to interfere with Plaintiff's expectancy. Mere knowledge of a possible result of certain actions, without more, cannot constitute an intentional interference. Plaintiff fails to allege, for example, any particular instances of direct or even indirect contact by Defendants with UMD. *17th St. Assocs., LLP v. Markel Int'l Ins. Co.*, 373 F. Supp. 2d 584, 601 (E.D. Va. 2005) ("contact by the defendant with the source of the plaintiff's business expectancy, direct or indirect, is a de facto prima facie element of a claim for tortious interference with a business expectancy."). The fact that Strieter published the June 11, 2007 email with knowledge that its contents might be shared with UMD is not the form of indirect contact required to state a prima facie case of intentional interference.

Furthermore, Plaintiff fails to show how Strieter's alleged interference was accomplished by "improper means," which includes tortious, illegal, or unethical conduct. *Maximus*, 254 Va. at 414. Plaintiff fails to allege illegal conduct, and the only independently tortious conduct alleged in the Complaint is defamation. Yet for the reasons explained above and below, Plaintiff cannot state a claim for defamation because he fails to allege facts supporting a conclusion that the email sent by Strieter was false or defamatory. Plaintiff also fails to allege that Defendants' conduct was unethical under the circumstances, and the facts set forth in the Complaint do not support such a conclusion in any case. The mere fact that Strieter removed Plaintiff from his positions and published the June 11, 2007 email with awareness of its potential effect for Plaintiff's pending appointment at UMD and general faculty position at UVA, without more, is insufficient evidence that Strieter acted unethically, and thus engaged in "improper means." Because the facts alleged do not support a conclusion that Defendants used improper means to

13

interfere with Plaintiff's expectancy or that Defendants intentionally interfered with Plaintiff's expectancy, Plaintiff fails to state a claim for tortious interference against Strieter in his official capacity.

### E. MOTION TO AMEND TORTIOUS INTERFERENCE CLAIM

Conceding that the Commonwealth, not the University, is the proper defendant for a tortious interference claim, Plaintiff seeks leave to amend Count 1. As explained above, a court may deny leave to amend where amendment would be futile, and an amendment may properly be found futile where, as a matter of law, it fails to state a claim. *Donaldson*, 930 F.2d at 349. Even if Plaintiff were to add the Commonwealth as a Defendant, he would fail to state a claim for tortious interference for the reasons already set forth above. Because amendment would be futile, Plaintiff's Motion to Amend Count 1 is denied.

### F. TORTIOUS INTERFERENCE (AGAINST STRIETER IN HIS INDIVIDUAL CAPACITY)

Plaintiff advances Count 2 as an alternative count in the event that the Court determines that Strieter was not acting in the course of his official capacity as Chair of the Department of Medicine. Because the facts alleged do not in any way support a conclusion that Strieter was acting outside the scope of his employment as Chair of the Department of Medicine, Plaintiff's tortious interference claim against Strieter in his individual capacity is dismissed.

### G. DEFAMATION

Plaintiff claims that Strieter's June 11, 2007 email to the faculty and staff of the Division was defamatory because it falsely stated that Plaintiff was terminated as Chief and Director "in response to an ongoing personnel matter," which implied that Plaintiff was guilty of some grievous personal wrongdoing. Defendants first argue that this claim should be dismissed because it is barred by the statute of limitations.

### 1. *Statute of Limitations*

Virginia law requires that an action for defamation be brought within one year after the cause of action accrues. Va. Code § 8.01-247.1 (2008). Because the allegedly defamatory email was sent on June 11, 2007, Plaintiff's defamation claim was barred under the statute of limitations as of June 11, 2008. Plaintiff filed his Complaint on August 29, 2008, well after the June 11, 2008 deadline. The parties entered into a tolling agreement on June 15, 2008 that was effective until September 15, 2008; but the agreement did not toll the statute of limitations for the defamation claim, which expired on June 11, 2008. Furthermore, the agreement clearly states that "[a]ny statute of limitations shall be tolled as to any claims of the Plaintiffs against the Defendants *which were not barred thereby as of the date of this Tolling Agreement*" (emphasis added). By its own terms, the tolling agreement was not applicable to the defamation claim because the claim was already barred on the date the agreement was signed.

### 2. *Equitable Estoppel*

Plaintiff argues that the principles of equitable estoppel should permit his defamation claim to proceed regardless of the applicable statute of limitations because Defendants were aware that negotiations over mediation and the tolling agreement would cause him to delay filing the Complaint until after mediation was complete and the statute of limitations for the defamation claim had expired.

Equitable estoppel "bars a statute of limitations defense by a defendant who, 'by his conduct, lulls another into a false security, and into a position he would not take only because of such conduct." *United States ex rel Humble Oil & Ref. Co. v. Fid. & Cas. Co. of New York*, 402 F.2d 893, 897 (4th Cir. 1968) (quoting *McWaters & Bartlett v. United States*, 272 F.2d 291, 296 (10th Cir. 1959)). In order for the doctrine to apply, a plaintiff must show that the defendant took "actions it should unmistakably have understood would cause the [plaintiff] to delay filing his

15

charge." *Price v. Litton Bus. Sys.*, 694 F.2d 963, 965-66 (4th Cir. 1982). Proof of fraud or deception is not required. *Humble Oil*, 402 F.2d at 898.

Plaintiff fails to allege any facts in his Complaint that would support a conclusion that Defendants entered into negotiations over mediation and the tolling agreement with the aim of lulling him into a false sense of security concerning the statute of limitations. In fact, Plaintiff fails to even mention the tolling agreement and the efforts at mediation in the Complaint. Because Plaintiff fails to allege that Defendants took actions that they should have understood would cause Plaintiff to delay filing his charge, the principles of equitable estoppel should not apply to prevent the application of the statute of limitations in this case.

### 3. Falsity

An allegedly defamatory statement must be false in order to be actionable. *McBride v. City of Roanoke Redevelopment & Hous. Auth.*, 871 F. Supp. 885, 892 (W.D. Va. 1994) (citations omitted). For the reasons already set forth above, Plaintiff fails to plead facts sufficient to support a conclusion that the statement at issue in Strieter's email was false. It cannot be reasonably disputed that Strieter removed Plaintiff from his positions "in response to an ongoing personnel matter," even if there were other underlying reasons for the removal, as Plaintiff claims. Plaintiff fails to state a claim for defamation because, in addition to the statute of limitations bar, the facts alleged in the Complaint do not support a conclusion that Strieter's statement was false. Count 3 is therefore dismissed.

## H. WRONGFUL TERMINATION/ BREACH OF CONTRACT (AGAINST THE UNIVERSITY)

### 1. Virginia Code Sections 2.2-814 and 8.01-192

Plaintiff claims that he was wrongfully terminated in breach of his employment contract with UVA because his position as Director was not a discretionary appointment and Defendants lacked good cause to fire him. Defendants first argue that this claim should be dismissed because

16

Plaintiff failed to follow the required steps for making a pecuniary claim against the Commonwealth under Virginia Code Section 2.2-814, which requires that a claimant present his claim to "the head of the department, division, institution or agency of the Commonwealth responsible for the alleged act or omission which, if proved, gives rise to the claim." After a claim is denied, only then does a claimant's cause of action accrue permitting him to seek redress in a circuit court. Va. Code § 8.01-192. Because Section 2.2-814 provides a limited waiver of sovereign immunity, it must be strictly construed in favor of the Commonwealth. *Amaram v. Va. St. Univ.*, 476 F. Supp. 2d 535, 540 (E.D. Va. 2007).

Plaintiff failed to present his breach of contract claim to the President of UVA as required by Section 2.2-814. Because the President is the head of the institution of the Commonwealth responsible for the alleged act giving rise to Plaintiff's claim, Plaintiff was required by the statute to present the claim to him. *See Scallet v. Rosenblum*, Law No. 6250 (Albemarle County Cir. Ct. 1998) (unpublished) (acknowledging that the President of UVA is the head of the agency to which a pecuniary claim should be directed under the predecessor to Va. Code § 2.2-814). While Plaintiff argues that he complied by presenting his claim to Defendants' counsel and engaging in months of settlement negotiations, those actions were insufficient under the plain language of the statute. Furthermore, the fact that Defendants' counsel, who is also counsel for the President of UVA, received a copy of the Complaint does not satisfy the requirements of the statute. When viewed in tandem with Section 8.01-192, it is evident that Section 2.2-814 requires a claimant to present his pecuniary claim to the President and have the claim rejected before filing a Complaint in circuit court. As such, providing the Complaint to Defendants' counsel or even directly to the President of UVA would not suffice. Construing Section 2.2-814 strictly in favor of the Commonwealth, Plaintiff cannot state a claim

17

for wrongful termination or breach of contract because he never presented his pecuniary claim to the President of UVA.

### 2. Breach of Contract

Moreover, Plaintiff cannot state a claim for which relief may be granted because he does not allege the existence of a contract governing his positions as Director or Chief. Plaintiff's allegation that his position as Director was a five-year appointment subject to non-discretionary tenure is insufficient to rebut the presumption of at-will employment and does not support the existence of an employment contract. Without a contract, there can be no breach for which Plaintiff may seek relief.

### 3. Wrongful Termination

For reasons already discussed, Plaintiff's allegations are insufficient to rebut the presumption that his position as Director was a form of at-will employment. Furthermore, because there is no allegation of a contract establishing employment for a definite period, the Court may presume that Strieter could chose to remove Plaintiff for any reason upon reasonable notice. *See, e.g., McFarland v. Va. Ret. Servs.*, 477 F. Supp. 2d 727, 732 (E.D. Va. 2007) (citing *County of Giles v. Wines*, 262 Va. 68, 72 (2001)).

Virginia recognizes an exception to the doctrine of at-will employment "based on an employer's violation of public policy in the discharge of an employee." *Rowan v. Tractor Supply Co.*, 263 Va. 209, 213 (2002). This exception, however, is "not so broad as to make actionable those discharges of at-will employees which violate only private rights or interests." *Miller v. SEVAMP, Inc.*, 234 Va. 462, 468 (1987). Because Plaintiff fails to identify any Virginia statute establishing the public policy alleged to have been violated by Defendants, and because the facts alleged do not support such a violation in any case, Plaintiff cannot state a claim for wrongful termination. Because Plaintiff cannot state a claim for breach of contract or wrongful termination

18

under the facts alleged and failed to comply with the applicable statutory requirements for bringing a pecuniary claim against the University, Count 6 is dismissed.

### I. Punitive and Exemplary Damages

Because Plaintiff fails to state a claim as to each of the above six counts of the Complaint, punitive and exemplary damages are inappropriate in this case. Defendant's Motion to Dismiss Count 7 of the Complaint is granted.

### IV. Conclusion

For the reasons stated herein, the Court will grant Defendant's Motion to Dismiss as to Counts 1, 2, 3, 5, 6, and 7 of Plaintiff's Complaint and deny Plaintiff's Motion to Amend Counts 1 and 4. An appropriate Order will follow. The Clerk of Court is hereby directed to send a certified copy of this Memorandum Opinion and the accompanying Order to all counsel of record and to Plaintiff.

Entered this 9th day of December, 2008.

NORMAN K. MOON
UNITED STATES DISTRICT JUDGE